**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

U.S. DISTRICT COURT
EASTERN DISTRICT - WI
FILED

2019 JUL 12 P 1: 22

STEPHEN C. DRIES
CLERK

WILLIAM C. FROEMMING
    Plaintiff

    v.

CITY OF WEST ALLIS,
CITY OF WEST ALLIS CHIEF
OF POLICE PATRICK MITCHELL, in his Official capacity,
SERGEANT WAYNE TREEP,
OFFICER LETE CARLSON,
OFFICER RYAN STUETTGEN,
    Defendants.

**19-C-0996**

---

## CIVIL RIGHTS COMPLAINT WITH REQUEST FOR TRIAL BY JURY

---

NOW COMES Plaintiff, WILLIAM C. FROEMMING, Pro Se, and complains against the above-named Defendants, and for his claims for relief, alleges and shows to the court with request for trial by jury as follows:

### I. INTRODUCTION

1. This is a civil rights action under 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights to be free of excessive force, unlawful arrest and malicious prosecution, as well as equal protection under the laws as secured by the First, Fourth and Fourteenth Amendments of the United States Constitution.

1

## II. JURISDICTION AND VENUE

2. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

3. Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because the events and conduct giving rise to the Plaintiff's claims asserted herein occurred within this judicial district.

## III. PARTIES

4. William C. Froemming, date of birth January 28, 1966, was 50 years old and at all times relevant hereto was an adult citizen of the United States living at a home in Kapa'a, HI. Mr. Froemming suffered severely on July 14, 2016 and times since then as a result of the Defendants' unlawful conduct as alleged herein.

5. Defendant City of West Allis ("West Allis"), with offices of its executive at 7525 W Greenfield Ave, West Allis, WI 53214, is and was at all times material hereto, a Municipal Corporation organized under the laws of the State of Wisconsin. West Allis established, operated and maintained West Allis Police Department ("WAPD") at all times material hereto; West Allis is ultimately responsible for the training, supervising, and discipline of WAPD employees and the creation and implementation of its policies and procedures through its Chief of Police, currently Chief Patrick Mitchell, and had ultimate

control and authority over WAPD and all WAPD Defendants at all times herein, and pursuant to Wis. Stat. § 895.46, is obligated to indemnify all Defendants in this action.

6. Defendant Patrick Mitchell ("Mitchell") is the Police Chief of the WAPD. In that capacity he oversees the WAPD. By law, custom, de-facto or otherwise, and/or delegation, he has policy-making authority over the police department for all actions at issue in this case. He is responsible for ensuring that the policies and practices of the WAPD comply with federal and state requirements for the treatment of citizens like the Plaintiff. He is sued in his official capacity for all the constitutional claims at issue arising out of Plaintiff's unlawful hate motivated and excessive force arrest, detention and malicious prosecution. As the Chief of the West Allis Police Department, Defendant Mitchell both exercised and delegated his municipal final decision-making power to the WAPD Professional Standards department and others. At all times relevant to this action, Mitchell was acting under color of law and within the scope of his employment with the WAPD and West Allis.

7. Defendant Sergeant Wayne Treep ("Treep") is an adult citizen of the State of Wisconsin and a resident of the State of Wisconsin. Defendant Treep was a sergeant with WAPD at all times relevant to this action and was acting under color of law and within the scope of his employment with the WAPD

and West Allis at all times relevant hereto.

8. Defendant Police Officer Lete Carlson ("Carlson") is an adult citizen of the State of Wisconsin and a resident of the State of Wisconsin. Defendant Carlson was an officer with WAPD at all times relevant to this action and was acting under color of law and within the scope of her employment with the WAPD and West Allis at all times relevant hereto.

9. Defendant Police Officer Ryan Stuettgen ("Stuettgen") is an adult citizen of the State of Wisconsin and a resident of the State of Wisconsin. Defendant Stuettgen was a police officer with WAPD at all times relevant to this action and was acting under color of law and within the scope of his employment with the WAPD and West Allis at all times relevant hereto.

## IV. GENERAL FACTUAL ALLEGATIONS

10. Plaintiff realleges and incorporates by reference the allegations of all the preceding paragraphs.

## A. BACKGROUND

11. Civil rights abuses by law enforcement against citizens in the United States is a national crisis. Through the use of techniques, including but not limited to, evidence tampering, falsification of police reports, perjury (aka "testilying"), lying to citizens in order to elicit information that could incriminate themselves, use of military equipment, training and other tactics,

4

law enforcement continues to unconstitutionally harass and assist to convict and injure innocent individuals on a daily basis.

12. An internet search for "testilying" produces over 19,000 results. Most conclude that it is rampant and continues to this day to the detriment of the justice system. The ones that state otherwise do not deny it happens, but rather try to justify it as "effective policing".

13. On the day this complaint is being completed, we have a headline story detailing a Florida Deputy Sheriff (Zach Wester) who has been charged with several crimes related to falsification of reports, planting of drugs in simple traffic stops, tampering with his body cam footage, testilying, etc.

14. The law enforcement landscape of the United States has become a war zone, with police taking the attitude of guilty until proven innocent. "Arrest them all and let the courts sort them out." seems to be the attitude of the day.

15. We have completely innocent individuals being killed because some hate filled individual "SWATTED" them.

16. We have completely innocent individuals being shot in the back and officers walking away from any charges whatsoever.

17. And we have people doing nothing wrong, posing a threat to nobody, being dragged out of their car after officers having violently smashed in the

window, based on an individual choosing to stand up for their rights as established by the Constitution of the United States of America and its Amendments.

18. Plaintiff filed "Complaint Forms" with the WAPD Professional Standards division on June 27, 2019. Through information and knowledge, Plaintiff knows that department to have neither the jurisdiction, authority or means to redress the grievances presented herein. Plaintiff will file an amended complaint once the results of their investigations is complete. Plaintiff has received no indication of when this will be.

## B. UNLAWFUL ARREST, EXCESSIVE USE OF FORCE, AND DETENTION OF MR. FROEMMING

19. On the evening of July 13, 2016, Mr. Froemming left his mother's house in her rental car with her approval at approximately 11 pm, to get out of the house that was excessively hot. It had been a hot day (official high of 90 F) in West Allis and Mr. Froemming had worked outside all day building new stairs for his mother's house entrance.

20. Mr. Froemming had a plane to catch home the next morning at 9:50 am. Not being able to fall asleep at his mother's house (sleeping area estimated to be in excess of 100 deg F), Mr. Froemming calmly drove around neighborhoods that he had grown up in to cool down. After a short amount of

driving, he decided to pull over on a quiet low traffic street to get some sleep.

21. Mr. Froemming pulled the car over on S. 94th St. near Becher St. and slightly reclined his seat. He turned the car off and fell asleep. Mr. Froemming did not know how to deactivate the headlights on this rental car's system so he left them, and assumed they would automatically shut off after a set amount of time.

22. At approximately 3:05 am on the morning of July 14, 2016, Officer Lete Carlson observed Mr. Froemming's parked vehicle with its headlights illuminated.

23. Carlson pulled up beside the vehicle and observed Mr. Froemming sleeping in the car.

24. There were no signs of any wrongdoing, no damage to the car, no haphazard parking job, no discernible threats to him or anyone else, no weapons or drugs in plain view or suspected and no indications that the car was **running**.

25. Carlson parked her squad behind Mr. Froemming's vehicle and immediately detained him by illuminating her emergency lights while Plaintiff was still asleep in a parked car in violation of Wi. Stat. 347.25(1m)(b).

26. Activation of her emergency lights automatically activated her

dashcam recording system and microphone.

27. Carlson did not ever see the car in motion.

28. Carlson did not see Plaintiff activate or manipulate any controls that would assist in putting the vehicle in motion.

29. Carlson exited her vehicle and approached Mr. Froemming's parked vehicle.

30. Carlson did not stop to sense whether there was exhaust coming out of the tail pipes to determine if the vehicle was running.

31. Carlson did not at any time touch the hood to feel for heat or vibration to determine if the vehicle was running.

32. Carlson did not touch the tires to see if they were warm to determine if the vehicle was running.

33. After the arrest, Carlson did not access any of the car's electronic recording systems (OBD, EDR, etc.) to confirm her suspicion that the car may have been running.

34. Carlson requested that Mr. Froemming roll down the driver's side window.

35. Mr. Froemming responded by starting the vehicle, rolled down the electric window approximately two inches, then turned the car off.

36. At this time and throughout the times herein, Carlson never

identified herself as a LEO in violation of Wi. Stat. 968.24.

37. Carlson began to question Mr. Froemming without probable cause after illegally detaining him and not identifying herself as a LEO.

38. Mr. Froemming answered Carlson's questions as best he could after having just been abruptly woken from a restful slumber.

39. With no request for backup having been made, an additional squad car arrived with Stuettgen being the piloting officer.

40. Based on information and knowledge, Stuettgen manually activated his dashcam recording system after being on the scene for approximately 6 minutes.

41. Over the course of the next 10 minutes or so, 4 more squad cars arrived on the scene, for a total of 6 including the unmarked squad car of Treep.

42. When Treep arrived on the scene, he consulted with Carlson momentarily and then sent her to her vehicle to move it closer to Mr. Froemming's vehicle.

43. By sending her away from the immediate area, he removed her microphone from recording the conversation he was about to have with Mr. Froemming.

44. Treep has stated under oath on more than one occasion that he did

9

not activate his squad's recording system manually (which would have recorded our conversation), and has also stated under oath that his emergency lights were also not activated (which would automatically activate his recording system per WAPD Standards).

45. After Mr. Froemming cooperated with Treep in answering his questions, and verbally identifying himself, Treep made the decision for Officer Manthe to break out the window, unlock the doors and forcibly remove Mr. Froemming from his vehicle, causing physical pain and emotional distress to Plaintiff and violating his civil rights to be free from unwarranted search and seizure, as well as his 14th Amendment rights to due process.

46. Mr. Froemming was forced to the ground, with several officers using their boots and knees to hold him to the ground even though he was not resisting, causing physical pain, embarrassment and emotional distress to the Plaintiff.

47. Mr. Froemming was handcuffed and placed in the back of Carlson's squad car.

48. Once transported to the WAPD station at 11301 W. Lincoln Ave., Mr. Froemming was asked to give a breath sample, and he indicated that the only chemical analysis testing he would agree to was a blood sample. He did so because he was well aware of the shortcomings of the breathalyzer

samples and the dozen ways in which they can produce inaccurate readings.

49. Mr. Froemming was not observed for the required 20 minutes to ensure that he did not vomit, belch, smoke or regurgitate, which would have voided any sample given via the breathalyzer testing methods (one of their many flaws).

50. Mr. Froemming was released from the WAPD detainment facility after approximately 2 hours and after having found an individual whom he could be released to as they claimed he could not be released on his own recognizance.

## C. MALICIOUS PROSECUTION OF MR. FROEMMING

51. On May 16, 2017, Mr. Froemming appeared in the West Allis Municipal Court before the Honorable Paul M. Murphy.

52. Mr. Froemming was represented by Attorney Patrick Roney for this proceeding.

53. During this proceeding, Carlson stated under oath that she could not hear the engine of the car running, nor did she have any other indications that the car was running other than the illuminated lights, which any reasonable person knows does not mean that a car is running nor are the lights a component that would assist the vehicle into motion.

54. During the same proceeding, Carlson stated that Mr. Froemming

had refused both breath and blood chemical analysis testing.

55. During the same proceeding when asked what she thought Mr. Froemming had done wrong to prompt her to illuminate her lights and approach the vehicle, Carlson stated "I didn't think he had done anything wrong, that is why I was investigating".

56. During the same proceeding, Treep stated that he chose to not record his interaction with Mr. Froemming because others were recording. Carlson, who had been recording was sent away by him to move her car closer to Plaintiff's vehicle, even though Mr. Froemming was surrounded by 6 police vehicles on all sides except the sidewalk. And Stuettgen who was also recording, has somehow lost the audio that should be present with his dashcam system recording.

57. During the same proceeding, Treep stated that he did not activate his emergency lights, therefore his system was not automatically recording.

58. During the same proceeding, Treep stated that Mr. Froemming gave him a history lesson on statutes and probable cause.

59. Mr. Froemming was convicted during that proceeding and appealed the case to the Milwaukee County Circuit Court.

60. Mr. Froemming chose to represent himself moving forward in the appeal proceedings.

61. Mr. Froemming filed several FOIA requests with the WAPD over the course of the next 11 months (August 2017 to July 2018).

62. On March 12, 2018 Treep was sworn under oath in a preliminary proceeding and stated that "If I did put squad lights, it would be rear only, which doesn't activate the camera.". WAPD Standards provide no exception for some emergency lights activating record system and others not. In addition, FOIA requests to WAPD Records Department specifically regarding the record systems and what lights activate them produced no information to indicate that some emergency lights activate recording and others do not.

63. Review of the dashcam video from Stuettgen reveals that Treep arrived on the scene with emergency lights activated, and those lights remained activated the entire time he was at the scene. These emergency lights were **not** on the rear of the car, at least not the ones in the video from Stuettgen's dashcam.

64. The video from Stuettgen's dashcam clearly shows without any doubt, that Treep's emergency lights were activated and therefore he committed perjury on both May 16, 2017 and again on March 12, 2018 in violation of Wi. Stat. 946.31 when he stated that he had not activated his emergency lights, and that if he did, it was only rear lights.

65. On July 16, 2018 in the Milwaukee County Circuit Court before the

Honorable Thomas J. McAdams, Carlson took the stand under oath and when asked by Mr. Froemming how she could tell if the car was running she stated "I could hear the engine running". This is a direct contradiction to her May 16, 2017 sworn statement where, when asked by the Court "Did you hear the engine running" she replied "No. It's a, it was a brand new car, a Chrysler, they are quiet". She never corrected or adjusted her testimony in those or other proceedings related to this case.

66. Those two statements directly contradict one another and they are regarding material facts in this case. Carlson either committed perjury on May 16, 2017 or July 16, 2018 in violation of Wi. Stat. 946.31.

67. Mr. Froemming noted to the court on July 16, 2018 that the statement she made was perjurious and the court agreed to review the information, but never did.

68. On July 14, 2016 Carlson filed an incident report under the color of law stating that "I also located Froemmings driver's license **and** a Wendy's bag . . .". On May 16, 2017 Carlson stated under oath "Yeah, I located his ID **in** Wendy's bag.". The Court chimed in with the question "His ID was **in** a Wendy's bag?". She neither confirmed nor denied the truthfulness of that testimony verbally, but Mr. Froemming viewed her nodding yes in response to the Court's question, which the Court seemed to accept as a response to his

14

query. Carlson either violated Wi. Stat. 946.32 in False Swearing on her report filed July 14, 2016 or she is guilty of 946.31 Perjury in her testimony under oath at the May 16, 2017 trial.

69. On September 11, 2017, Plaintiff filed a records request with WAPD records department and sent a copy to the West Allis City Attorneys.

70. WAPD Records Department incredibly slow response to the September 11, 2017 request caused multiple delays in the proceedings in this litigation. No response was received until December 27, 2017 and that response was a request for $7.50 to cover printing costs of the request, which was mailed to them immediately.

71. West Allis Assistant City Attorney Nick Cerwin stated on at least 2 occasions during that 107 day period that "He would look into it" when Mr. Froemming complained to the court during proceedings on the delay in fulfilling this simple records request.

72. No records were received until January 12, 2018, a full 123 days since the initial request.

73. Records received were evasive and grossly incomplete.

74. On January 23, 2018, WAPD Records Department requested an additional fee in the amount of $75.55 for unfurnished records printing costs.

75. Payment was mailed immediately.

76. After reviewing and analyzing the initial records request response, Mr. Froemming filed an additional records request on February 26, 2018 for materials that would be relevant in light of the responses to the first request.

77. Evasive and incomplete records were made available on the day of trial, March 12, 2018.

78. Trial was rescheduled for July 16, 2018 due to these discovery materials having been provided at the last minute by West Allis and WAPD.

79. After reviewing and analyzing these new materials, and due to the statements made on March 12, 2018 under oath by Treep, Mr. Froemming filed a new records request on June 5, 2018.

80. Even though acknowledgement of receipt of records request was part of that request, no confirmation of receipt was received until June 12, 2018.

81. West Allis records department again acknowledged receipt of records request on June 18, 2018.

82. On July 10, 2018, after Mr. Froemming's July 9, 2018 email to West Allis records department regarding status of request, Lisa Bergman of West Allis records department responded with the following message "My Captain said he just has a few more things to get and it will be ready. Probably a couple of days yet.".

83. On July 16, day of trial, Mr. Froemming contacted West Allis records department via email about the status of the request. On July 17, 2018, Lisa Bergman of West Allis records department responded with the following message "Will someone be coming in to pick up this request? If so, the cost will be $82.25 (5 CD's & copies). Please give us a 24 hour notice so the CD's & copies will be ready for pick up.". This was the day after the trial, which was declared a mistrial due to the perjurious statements made by Carlson during the breathalyzer refusal hearing and the court not able to accept the original recording of her previous statements as proof of this perjury.

84. Once records were received on July 18, 2018, the answers were once again evasive and incomplete and were not delivered until two days after the set trial date.

85. The consistently late, evasive and incomplete responses on these records requests shows a pattern of interfering with the defense and the materials needed to mount the same.

86. On numerous occasions between August of 2017 and August of 2018, West Allis Assistant City Attorney Nick Cerwin attempted to mislead the court. Examples include, but are not limited to:

   A. Claiming that he was not aware that the video records had

previously been asked for. In truth, he had a copy of the records request filed by Attorney Patrick Roney, original defense counsel, filed on April 18, 2017 which clearly asked for the exact same video materials.

B. Claiming that he did not even know who the attorney was in this case. He had received a motion in September of 2017 indicating that Mr. Froemming would be proceeding Pro Se. He also had faced Mr. Froemming in court (in person and on phone appearances) on multiple occasions by that time when he made this statement (which was either March 12, 2018 or July 16, 2018).

C. Claiming that Mr. Froemming refused to communicate with him outside of the courtroom setting. Mr. Froemming had informed Mr. Cerwin in August of 2017 that he would communicate with him on these matters via written media only. He did admit this once Mr. Froemming called him out on this lie in court, but nevertheless was trying to paint a negative picture to the court of this Pro Se Defendant.

## D. FALSE SWEARING, DESTRUCTION OF AND TAMPERING WITH EVIDENCE

87. Under FOIA requests, attorneys for the defense have gathered various items including the available dashcam recordings of Carlson and Stuettgen.

18

88. Plaintiff was told that these recordings were exact copies of the original recordings, yet they all have a "Modified Date" of July 20, 2016. This indicates that 4 days after the recordings were made, they were modified from their originals rather than being exact copies of the originals.

89. On information and belief, based in part on the paragraphs above, the audio that is missing from Stuettgen's dashcam system is due to tampering with evidence coinciding with the modification of the files on July 20, 2016 in violation of Wi. Stat. 946.72.

90. On information and belief, based in part on paragraphs above, the recording from Treep's dashcam system was destroyed by one of several possible means, a violation of Wi. Stat. 946.72.

91. Treep is part of the archival system team for WAPD records including the archiving of dashcam videos according to his testimony on March 12, 2018. Treep had means and motive to destroy this video, as well as destroy the audio on the recording of Stuettgen's dashcam system.

92. Neither Treep nor Stuettgen reported any malfunctions or problems with their dashcam recording systems during the times relevant hereto.

93. On the reports filed by Carlson, the Plaintiff has found at least a dozen factual and material misstatements/falsifications.

94. On the report filed by Treep, the Plaintiff has found at least ten

factual and material misstatements/falsifications in a single page with only 6 paragraphs.

95. On the two breathalyzer tests reports filed by Stuettgen, he clearly falsifies that Mr. Froemming had been observed for 20 minutes prior to such tests being run.

96. As a direct and proximate result of the wrongful conduct of each of the Defendants, Plaintiff has been substantially injured. These injuries include, but are not limited to, loss of constitutional and federal rights, great pain and emotional distress, and ongoing special damages for psychologically related treatment caused by the unconstitutional and moving forces concerted conduct of all these Defendants.

97. Plaintiff also continues to suffer ongoing emotional distress, with significant PTSD type symptoms, including sadness, anxiety, stress, anger, depression, frustration, sleeplessness, nightmares and flashbacks from being attacked like this, both on the street and in the courts.

98. Plaintiff also fears for his life and well being, as he did on the night of the incident, as well as in the future considering what the results of this proceeding could instigate in the minds of these hateful defendants. Mr. Froemming feels he is putting a target on his back by filing this case, yet he feels the need to do so as one must sometimes sacrifice self for the greater

good.

99. Plaintiff's mother refuses to be a part of this complaint for the same fears of repercussions that could follow from Plaintiff succeeding in this litigation even though she too has suffered damages as a result of Defendants illegal actions.

100. Plaintiff is also entitled to punitive damages on all of his claims against the individual Defendants personally to redress their willful, malicious, wanton, reckless, felonious and fraudulent conduct.

101. The conduct, as alleged above and below, of Defendants, and against Mr. Froemming took place in substantial part because he chose to stand up for his civil rights and was aware of the laws surrounding his actions as well as the rights of the police in such instances.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Excessive Force in violation of the Fourth and Fourteenth Amendments
### (Against Defendants Treep, Carlson and Stuettgen)

102. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

103. 42 U.S.C. § 1983 provides that: Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of

21

the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

104. At all relevant times hereto, the above-named Defendants, were "persons" for purposes of 42 U.S.C. § 1983 and acted under color of state law to deprive Mr. Froemming of his constitutional rights.

105. All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as West Allis police officers and their acts or omissions were conducted within the scope of their official duties or employment.

106. At the time of the complained events herein, Plaintiff had a clearly established constitutional right under the Fourth Amendment to be secure in his person from unreasonable search and seizure through excessive force.

107. Plaintiff also had the clearly established Constitutional right under the Fourteenth Amendment to bodily integrity and to be free from excessive force by law enforcement.

108. Any reasonable police officer knew or should have known of these rights at the time of the complained conduct as they were clearly established at that time.

109. Defendants Treep and Carlson's actions and use of force, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them and violated these Fourth Amendment rights of Plaintiff.

110. Defendants Treep and Carlson's actions and use of force, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Mr. Froeming's federally protected rights. The force used by these Defendant officers in removing Mr. Froemming from his vehicle shocks the conscience and violated the Fourth and Fourteenth Amendment rights of Plaintiff.

111. Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Mr. Froemming's federally protected constitutional rights.

112. They did so with shocking and willful indifference to Plaintiff's rights and their conscious awareness that they could cause Plaintiff physical, psychological, monetary and emotional injuries.

113. The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of his constitutional rights and caused him other damages.

114. These individual Defendants are not entitled to qualified

immunity for the complained of conduct.

115. The Defendants to this claim at all times relevant hereto were acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiff.

116. As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual psychological and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

117. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

118. The Defendant West Allis, is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against the individual employee Defendants in this action because said Defendants were acting within the scope of their employment when they committed the acts described above.

## SECOND CLAIM FOR RELIEF
## 42 U.S.C. § 1983 – Retaliation in Violation of the First Amendment
### (Against Defendants Treep, Carlson and Stuettgen)

119. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

120. 42 U.S.C. § 1983 provides that: Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

121. At all relevant times herein, the above-named Defendants, were "persons" for purposes of 42 U.S.C. § 1983 and acted under color of state law to deprive Mr. Froemming of his constitutional rights.

122. All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as West Allis police officers and their acts or omissions were conducted within the scope of their official duties or employment.

123. At the time of the complained of events, Plaintiff had the clearly established constitutional right to be free from retaliation for the exercise of protected speech.

124. Any reasonable police officer knew or should have known of these

rights at the time of the complained conduct as they were clearly established at that time.

125. Mr. Froemming exercised his constitutionally protected right to question law enforcement and/or engaged in protected speech related to the constitutional rights of citizens with respect to searches of their property by the police and objectionable police conduct.

126. Retaliatory animus for Mr. Froemming's exercise of his constitutionally protected right to question West Allis Police Officers regarding the scope of their legal authority to search his car/person was a substantial motivating factor in the excessive force used by individual Defendants both at the scene as well as throughout the course of litigation.

127. The excessive force used against Plaintiff in retaliation for his protected conduct would deter a person of ordinary firmness from continuing to engage in the protected conduct.

128. All of these Defendant officers participated in this use of force as a means of retaliation for Mr. Froemming's protected speech and none of the Defendant officers took reasonable steps to protect Plaintiff from this retaliation for the protected speech. They are each therefore liable for the injuries and damages resulting from the objectively unreasonable and conscience shocking force of each other officer.

26

129. Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Mr. Froemming's federally protected constitutional rights.

130. The acts or omissions of all individual Defendants were moving forces behind Plaintiff's injuries.

131. These individual Defendants acted in concert and joint action with each other.

132. The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of his constitutional and statutory rights and caused him other damages.

133. These individual Defendants are not entitled to qualified immunity for the complained of conduct.

134. The Defendants to this claim at all times relevant hereto were acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiff.

135. As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual psychological, economic and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. As a further result of

27

the Defendants' unlawful conduct, Plaintiff has incurred special damages, including psychological expenses and may continue to incur further special damage related expenses, in amounts to be established at trial.

136. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

137. The Defendant, West Allis, is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against the individual employee Defendants in this action because said Defendants were acting within the scope of their employment when they committed the acts described above.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Malicious Prosecution in violation of the Fourth and Fourteenth Amendments
### (Against Defendants Treep, Carlson and Stuettgen)

138. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

139. 42 U.S.C. § 1983 provides that: Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the

deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

140. At all relevant times herein, the above-named Defendants, were "persons" for purposes of 42 U.S.C. § 1983 and acted under color of state law to deprive Mr. Froemming of his constitutional rights.

141. All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as West Allis police officers and their acts or omissions were conducted within the scope of their official duties or employment.

142. At the time of the complained of events, Plaintiff had the clearly established constitutional right to be free from malicious prosecution without probable cause under the Fourth Amendment and in violation of due process under the Fourteenth Amendment.

143. Any reasonable police officer knew or should have known of these rights at the time of the complained conduct as they were clearly established at that time.

144. Individual Defendants violated Mr. Froemming's Fourth and Fourteenth Amendment rights to be free from malicious prosecution without probable cause and without due process when they worked in concert to

secure false charges against him, resulting in his unlawful confinement and prosecution.

145. Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Mr. Froemming's federally protected constitutional rights.

146. The procurement of prosecution against Mr. Froemming for the known to be false allegations of OWI were malicious, shocking, and objectively unreasonable in light of the circumstances.

147. Those proceedings terminated in Plaintiff's favor. The West Allis Assistant City Attorney dropped the OWI charge without any compromise by Plaintiff, reflecting a prosecutorial judgment that the case could not be proven by a preponderance of evidence. Plaintiff also believes West Allis dropped these charges in order that the perjury that had already been committed by both Carlson and Treep would not be reviewed by the court. Mr. Froemming was presenting this information to the court in his Motion to Dismiss when West Allis dropped the OWI.

148. The conviction of Mr. Froemming on breathalyzer refusal was tainted by the Court refusing to review the provable perjury claims against West Allis' only witness on that charge and falsified test result claims.

149. The acts or omissions of all individual Defendants were moving

forces behind Plaintiff's injuries.

150. These individual Defendants acted in concert and joint action with each other.

151. The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of his constitutional and statutory rights and caused him other damages.

152. Defendants are not entitled to qualified immunity for the complained of conduct.

153. The Defendants to this claim at all times relevant hereto were acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in its actions pertaining to Plaintiff.

154. As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual psychological, economic and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including psychological related expenses and may continue to incur further special damages related expenses, in amounts to be established at trial.

155. In addition to compensatory, economic, consequential and special

damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

156. The Defendant, West Allis, is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against the individual employee Defendants in this action because said Defendants were acting within the scope of their employment when they committed the acts described above.

## FOURTH CLAIM FOR RELIEF
### Violation of 42 U.S.C. § 1983 – Deliberately Indifferent Policies, Practices, Customs, Training and Supervision in violation of the First, Fourth and Fourteenth Amendments and in violation of 42 U.S.C. § 1981
### (Against Defendants West Allis and Mitchell)

157. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

158. 42 U.S.C. § 1983 provides that: Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

159. Plaintiff in this action is a citizen of the United States and Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

160. The Defendants to this claim at all times relevant hereto were acting under the color of state law.

161. Plaintiff had the following clearly established rights at the time of the complained of conduct:

A. the right to be secure in his person from unreasonable seizure through excessive force, under the Fourth Amendment;

B. the right to bodily integrity and to be free from excessive force by law enforcement under the Fourteenth Amendment;

C. the right to exercise his constitutional rights of free speech under the First Amendment without retaliation;

D. the right to be free from discrimination by police under the Equal Protection Clause of the Fourteenth Amendment and under 42 U.S.C. § 1981; and,

E. the right to be free from malicious prosecution under the Fourth and Fourteenth Amendments.

162. Defendant Mitchell and Defendant West Allis knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

163. The acts or omissions of these Defendants, as described herein, deprived Mr. Froemming of his constitutional and statutory rights and caused him other damages.

164. Defendants are not entitled to qualified immunity for the complained of conduct.

165. Defendant Mitchell and Defendant West Allis were, at all times relevant, policymakers for the City of West Allis and the WAPD, and in that capacity established policies, procedures, customs, and/or practices for the same.

166. These Defendants developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violations of Mr. Froemming's constitutional and federal rights as set forth herein and in the other claims, resulted from a conscious or deliberate choice to follow a course of action among various available alternatives.

167. In light of the duties and responsibilities of those police officers that participate in arrests and preparation of police reports on alleged crimes and infractions, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to

34

result in violations of constitutional and federal rights such as those described herein that the failure to provide such specialized training and supervision is deliberately indifferent to those rights.

168. The deliberately indifferent training and supervision provided by Defendant West Allis and Defendant Mitchell resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant West Allis and Defendant Mitchell and were moving forces in the constitutional and federal violation injuries complained of by Plaintiff.

169. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual psychological, economic and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including psychological treatment related expenses and may continue to incur further psychological or other special damages related expenses, in amounts to be established at trial.

170. Finally, Plaintiff seeks appropriate declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 to redress Defendants' above described ongoing deliberate indifference in policies, practices, habits, customs, usages,

training and supervision with respect to the rights described herein, and with respect to the ongoing policy and/or practice of the Professional Standards department of failing to investigate or appropriately handle complaints of the same, which Defendants have no intention for voluntarily correcting despite obvious need for such correction.

## VI. PRAYER FOR RELIEF

Plaintiff prays that this Court enter judgment for the Plaintiff and against each of the Defendants and grants:

A. compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

B. economic losses on all claims allowed by law;

C. special damages in an amount to be determined at trial;

D. punitive damages on all claims allowed by law against individual Defendants and in an amount to be determined at trial;

E. costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

F. pre- and post-judgment interest at the lawful rate; and,

G. any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

**PLAINTIFF REQUESTS A TRIAL BY JURY.**

Respectfully Submitted this 12th day of July, 2019.

WILLIAM C FROEMMING, Pro Se
PO Box 1552
Kapa'a, HI 96746
Telephone: (414) 979 - 9459
Email: cadillac1960@yahoo.com